Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
|       **Plaintiff,** | **Criminal Action No.: 22-0031 (ES)** |
|     v. | **OPINION** |
| **KEVIN PATINO,** | |
|       **Defendant.** | |

**SALAS, DISTRICT JUDGE**

  Before the Court is defendant Kevin Patino's ("Defendant") motion to withdraw his guilty plea, pursuant to Federal Rule of Criminal Procedure 11(d). (D.E. No. 53 ("Motion" or "Mot.")). The United States of America (the "Government") filed an opposition (D.E. No. 64 ("Opp. Br.")), and Defendant filed a reply (D.E. No. 65 ("Reply Br.")). Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* L. Crim. R. 1.1; L. Civ. R. 78.1(b); *see also United States v. Thompson*, 48 F. App'x 24, 25 (3d Cir. 2002). For the reasons set forth below and for good cause shown, Defendant's Motion (D.E. No. 53) is **DENIED**.

**I.  BACKGROUND**

  The Court incorporates by reference the relevant factual and procedural background set forth in the Court's September 24, 2024 Letter Order (D.E. No. 60) and accordingly only includes additional facts herein as needed to resolve the instant Motion.

  On February 8, 2024, Defendant, who was formerly employed as a police officer by the New Jersey Paterson Police Department ("PPD"), pled guilty to a two-count Superseding Information, which charged Defendant with two misdemeanor counts of depriving an individual

of rights under color of law—and specifically the right to be free from unreasonable search and seizure, including the right to be free from the use of unreasonable force by law enforcement officers—in violation of 18 U.S.C. § 242. (*See* D.E. No. 43 (Superseding Information); D.E. No. 45 (Appl. for Permission to Enter Plea of Guilty); D.E. No. 46 (Plea Agreement); D.E. No. 48 (Tr. of Feb. 8, 2024 Plea Hr'g ("Tr.")))). These two misdemeanor counts stemmed from two separate incidents—one involving Defendant's assault of an individual that occurred on November 26, 2020, and a separate incident involving Defendant's assault of another individual that occurred on December 14, 2020, both of which also involved filing false reports with the PPD regarding these incidents.[1] (*See* D.E. No. 43).

On June 13, 2024, Valerie Palma DeLuisi, Esq. entered an appearance as counsel for Defendant, replacing Defendant's former counsel, Todd A. Spodek, Esq. (D.E. No. 50; *see also* D.E. No. 25). Shortly thereafter, on June 28, 2024, Defendant filed a motion to withdraw his guilty plea, alleging that he received ineffective assistance from his former counsel.[2] (Mot.; Mov. Br.; *see also* D.E. No. 53-1 (Sworn Declaration of Johanna Enriquez, dated June 28, 2024 ("Enriquez Decl."))[3]; D.E. No. 53-2 (Sworn Declaration of Defendant, dated June 26, 2024 ("Def. Decl."));

---

[1]    The Court notes that the December 14, 2020 incident led to the charges in the Superseding Indictment, but the November 26, 2020 incident set forth in the Superseding Information was not the subject of any pending charges in either the Indictment or the Superseding Indictment. (*Compare* D.E. No. 43, *with* D.E. Nos. 17 & 20).

[2]    Mr. Spodek was Defendant's second counsel in this matter; he entered an appearance on behalf of Defendant on May 30, 2022. (*See* D.E. No. 25). Prior to that date, Defendant was represented by Anthony Iacullo, Esq. (*See* D.E. No. 18). While Defendant initially did not specify which of his two prior attorneys he was claiming provided him ineffective assistance of counsel (*see* D.E. No. 53-5 ("Mov. Br.")), he later clarified this in opposition to the Government's motion for a limited privilege waiver wherein he seemed to limit his claim of ineffective assistance of counsel solely to Mr. Spodek (*see* D.E. No. 57 at 3 ("[A]ny advice that Mr. Iacullo *may* have given Mr. Patino regarding collateral consequences of a guilty plea certainly did not pertain to the actual guilty plea entered by Mr. Patino. Moreover, any advice given by Mr. Iacullo was superseded by Mr. Spodek's two-year representation of Mr. Patino and the fact that a second criminal charge arose. Moreover, Mr. Patino did not waive privilege with Mr. Iacullo, since there are no allegations against Mr. Iacullo." (emphasis in original))). Thus, as it relates to the instant Motion, the Court assumes Defendant's references to his "former counsel" in his motion papers solely refers to Mr. Spodek, and accordingly the Court herein only analyzes Defendant's ineffective assistance of counsel claim with respect to Mr. Spodek, not Mr. Iacullo.

[3]    Ms. Enriquez states that she has a personal relationship with Defendant and that she accompanied him to

D.E. Nos. 53-3 & 53-4 (exhibits submitted in support of Defendant's Motion)). In light of Defendant's allegation of ineffective assistance of counsel, the Government filed a motion for an order (i) permitting it to speak with Defendant's former counsel and (ii) extending its deadline to respond to Defendant's Motion. (D.E. No. 55). On September 24, 2024, the Court granted the Government's motion. (D.E. No. 60).

On December 20, 2024, the Government filed an opposition to Defendant's Motion (Opp. Br.) along with two supporting certifications—one from Defendant's former counsel, Todd Spodek, Esq. (D.E. No. 64-1 ("Spodek Certification" or "Spodek Cert.")), and one from Defendant's co-defendant's former counsel, Patrick Caserta, Esq.[4] (D.E. No. 64-2 ("Caserta Certification" or "Caserta Cert.")). On January 23, 2025, Defendant filed a reply. (Reply Br.). The Motion is fully briefed.

## II. LEGAL STANDARD

"[A] guilty plea is a grave and solemn act." *United States v. Wilson*, No. 22-0856, 2025 WL 1114647, at *6 (D.N.J. Apr. 15, 2025) (alteration in original) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "As a result, it is axiomatic that '[o]nce a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim.'" *Id.* (alteration in original) (quoting *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003)); *see also United States v. Dumay*, No. 22-0306, 2024 WL 4370831, at *2 (D.N.J. Oct. 2, 2024) ("Withdrawal of a guilty plea is 'inherently in derogation of the public interest in finality and the orderly administration of justice.'" (quoting *Brady*, 397 U.S. at 748)).

Federal Rule of Criminal Procedure 11(d)(2)(B) "provides that '[a] defendant may

---

Court on the day he pled guilty. (Enriquez Decl. ¶ 1).

[4]     Mr. Caserta previously represented Defendant's co-defendant Kendry Tineo-Restituyo, against whom the Government dismissed the charges in the Superseding Indictment in February 2024. (*See* D.E. No. 47).

withdraw a plea of guilty . . . (2) after the court accepts the plea, but before it imposes sentence if: . . . (B) the defendant can show a fair and just reason for requesting the withdrawal.'" *United States v. Wilder*, 134 F. App'x 527, 528 (3d Cir. 2005) (alterations in original) (quoting Fed. R. Crim. P. 11(d)). In determining whether a defendant has shown a "fair and just reason" for withdrawal, a district court must consider three factors: (i) "whether the defendant asserts his innocence"; (ii) "the strength of the defendant's reasons for withdrawing the plea"; and (iii) "whether the government would be prejudiced by the withdrawal." *Jones*, 336 F.3d at 252. "This analysis requires that a district court *consider* each factor, but critically, does not make any one mandatory such that failure to establish one will necessarily dictate rejection of the motion." *Wilder*, 134 F. App'x at 528.

"A defendant 'bears a substantial burden' in showing that withdrawal of a guilty plea is justified." *United States v. Berkowitz*, No. 22-1967, 2023 WL 2064510, at *3 (3d Cir. Feb. 17, 2023) (quoting *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011)); *see also Jones*, 336 F.3d at 252 ("The burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial." (quoting *United States v. Hyde*, 520 U.S. 670, 676–77 (1997); *United States v. Isaac*, 141 F.3d 477, 485 (3d Cir. 1998))). Additionally, a "defendant has no absolute right to withdraw a guilty plea prior to sentencing." *United States v. Crowley*, 529 F.2d 1066, 1071 (3d Cir. 1976). "The granting of such a motion 'lies within the sound discretion of the trial court and its determination will only be disturbed where it has abused its discretion.'" *Id.* (quoting *United States v. Vallejo*, 476 F.2d 667, 669 (3d Cir. 1973)).

### III.  DISCUSSION

Defendant argues his motion to withdraw his guilty plea should be granted because he was provided ineffective assistance of counsel by his former counsel, Mr. Spodek, which rendered his

4

guilty plea unintelligent and involuntary. (*See generally* Mov. Br.; Def. Decl.; Reply Br.; *see also* D.E. No. 57; Enriquez Decl.). Specifically, Defendant contends Mr. Spodek (i) told him to plead guilty "to misdemeanors he did not commit"; (ii) "told him to just block it all out and answer 'yes'" to everything so he could "get his life back"; and (iii) failed to properly advise him of the "full consequences of his guilty plea" in that he did not advise him that his guilty plea could or would cause him to (1) lose his employment with the PPD, (2) lose his public pension, and (3) be barred him from future public employment (together, the "Relevant Collateral Consequences"). (Mov. Br. at 1–2, 5–9; *see also* Def. Decl.; Reply Br.).

Defendant states he is not guilty of the charged offenses and instead only pled guilty because his former counsel told him if he did, that he would "receive a slap on the wrist" and "[his] life would remain intact and [his] co-defendant would get dismissed." (Def. Decl. ¶¶ 10–11, 33–36). Defendant also states his former counsel did not tell him, and he did not understand, "that a misdemeanor guilty plea in federal court is the equivalent of at least a third-degree official misconduct conviction in the State of New Jersey" (*id.* ¶ 23 (emphasis omitted)), and as a result, collateral consequences of his guilty plea include mandatory forfeiture of his pension and giving up future public employment (*id.* ¶ 32).[5] Defendant asserts he never would have pled guilty had he known "that pleading guilty to a misdemeanor would result in an automatic forfeiture of [his] job," his pension, and future public employment, and he claims he had the right to be informed of

---

[5] In support of this statement, Defendant cites to the complaint that the State of New Jersey via the Attorney General of New Jersey filed against him, seeking to declare (i) "that [D]efendant has forfeited holding any public office, position, or employment held by him under the government of this State or any of its administrative or political subdivisions"; (ii) "that [D]efendant is permanently disqualified from holding any future office or position of honor, trust, or profit, under this State or any of its administrative or political subdivisions"; and (iii) "that [D]efendant has forfeited all of his pension or retirement benefits earned as a member of any State or locally administered pension fund or retirement system in which defendant participated at the time of the commission of his offenses and which covered his position as a police officer." (D.E. No. 53-4 at 1–2). This complaint was attached as an exhibit to Defendant's Motion. (*See generally* D.E. No. 53-4).

these "very significant consequences." (*Id.* ¶¶ 29–30).

The Government opposes, arguing that the statements set forth in the Spodek Certification and the Caserta Certification completely contradict Defendant's main allegation in his Motion— namely, that he "had no idea at all[,] no one ever told [him]," and he "did not know" about the Relevant Collateral Consequences of his guilty plea. (Opp. Br. at 2 (alterations in original); *see also id.* at 1–3; Spodek Cert.; Caserta Cert.). The Government contends that even if Defendant's assertions that he was told to simply say "yes" to everything at his plea hearing and "block it all out" could be deemed a sufficient reason for Defendant to believe it was acceptable to lie under oath at his plea hearing, Mr. Spodek's certification contradicts those assertions. (*Id.* at 2 (citing Spodek Cert. ¶¶ 29–31)). The Government also asserts that the advice Defendant's former counsel provided to him "was not unreasonable, and, in any event, [Defendant] suffered no prejudice." (*Id.*). Further, the Government notes that Defendant does not dispute that he assaulted both alleged victims as described in the Superseding Information to which he pled guilty and which he admitted under oath during the plea colloquy; and the Government argues that Defendant now claiming he believes the force he used was justified is not sufficient to undermine his prior admission under oath. (*Id.*). Accordingly, the Government submits that the Court should deny Defendant's Motion. (*Id.* at 1, 3).

The Court will address each of the three *Jones* factors in turn to determine whether Defendant has met his substantial burden in showing a fair and just reason for withdrawing his guilty plea. As explained more fully below, the Court finds Defendant has failed to meet this burden.

**A. Assertion of Innocence**

The first *Jones* factor is whether the defendant asserts his innocence. *Jones*, 336 F.3d at

252. However, "[b]ald assertions of innocence . . . are insufficient to permit a defendant to withdraw [his] guilty plea." *United States v. Kwasnik*, 55 F.4th 212, 217 (3d Cir. 2022) (second and third alterations in original) (quoting *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001)). Rather, "[a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense." *Id.* (quoting *Brown*, 250 F.3d at 818). This "first factor requires a defendant both to proclaim his innocence and to fortify this assertion by identifying exculpatory evidence in the record." *United States v. Brooks*, 431 F. App'x 95, 98 (3d Cir. 2011); *see also United States v. Cannistraro*, 734 F. Supp. 1110, 1121 (D.N.J.), *aff'd sub nom.*, 919 F.2d 133 (3d Cir. 1990), *and aff'd*, 919 F.2d 137 (3d Cir. 1990) ("Mere assertions of innocence unfounded on 'specific evidence' do not constitute a fair and just reason to withdraw a guilty plea." (citations omitted)); *United States v. D'Amelio*, No. 01-5412, 2002 WL 1067769, at *2 (E.D. Pa. May 24, 2002) ("[A] defendant's mere assertion of innocence is not a sufficient ground for withdrawal of a guilty plea. A defendant's assertion[] of innocence must be credible to warrant the vacating of a validly entered guilty plea." (citation omitted)).

"A defendant must also 'give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea.'" *Berkowitz*, 2023 WL 2064510, at *3 (quoting *Kwasnik*, 55 F.4th at 217). "This is so because '[a] plea of guilty is a statement under oath, not a stopgap option to be discarded when it is no longer useful.'" *Wilson*, 2025 WL 1114647, at *6 (alteration in original) (quoting *United States v. Ho-Man Lee*, No. 13-0029, 2015 WL 1954600, at *12 (D.N.J. Apr. 28, 2015)). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Jones*, 336 F.3d at 252 (citations omitted).

Here, while Defendant now asserts that he is not guilty of the charged offenses (*see* Mov. Br. at 1, 5–6; Def. Decl. ¶¶ 10–11, 33–36) to which he previously pled guilty under oath (*see generally* Tr.), the Court finds this is an unsupported claim of innocence. Defendant states in his sworn declaration that he is not guilty of the offenses to which he pled guilty and that he only pled guilty because his former counsel told him to do so and did not inform him of the Relevant Collateral Consequences. (*See generally* Def. Decl.; *see also* Mov. Br.; Reply Br.). But tellingly Defendant does *not* say that he did not assault the alleged victims as set forth in the Superseding Information to which he pled guilty, and thus Defendant does not dispute that he took the actions described in the Superseding Information. (*See* Def. Decl.; *see also* Mov. Br.; Reply Br.). Indeed, Defendant admitted under oath each of the questions establishing the factual basis for the charges in the Superseding Information. (*See* Tr. at 31:23–38:17).

While Defendant's current counsel notes Mr. Spodek's declaration confirms that Defendant believed his actions "were justified" (Reply Br. at 1 (citing Spodek Cert. ¶ 4)), Defendant himself does not state this in his declaration, and even if he did, a subjective belief that assaulting individuals was "justified" does not mean those actions were lawful. Additionally, "[i]t is not enough, post-plea, to proffer a defense to the charges; 'There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal.'" *Wilson*, 2025 WL 1114647, at *9 (quoting *United States v. Feliz*, No. 14-0327, 2019 WL 6496932, at *22 (D.N.J. Dec. 3, 2019)). "A defendant's reason for withdrawing his plea must rise above the 'belie[f] he made a bad choice in pleading guilty,' a 'change of heart,' or '[p]ost-plea regrets.'" *Feliz*, 2019 WL 6496932, at *22 (alterations in original) (citations omitted). "Indeed, a defendant's claim of innocence fails where he does not deny that he committed the offense." *United States v. Ganuza*, No. 05-0042, 2007 WL 3391429, at *2 (D.V.I. Nov. 5, 2007).

8

The Court finds Defendant's statements do not constitute a meaningful assertion of innocence and are unsupported by relevant facts and/or sufficient supporting evidence.[6] Additionally, even taking Defendant's assertion of innocence and Ms. Enriquez's supporting declaration at face value, Defendant has failed to sufficiently explain why he took a contradictory

---

[6] Aside from Defendant's own self-serving declaration, the only evidence he submits in support of his claim of innocence is the declaration of Ms. Enriquez who states she has a personal relationship with Defendant. (*See generally* Enriquez Decl.). Ms. Enriquez merely offers that she accompanied Defendant on the day he pled guilty and overheard him claim his innocence that day. (*See id.*). Specifically, Ms. Enriquez avers that she overheard Defendant tell Mr. Spodek prior to his plea hearing that he "was not comfortable pleading guilty because he was innocent" and that he "did not think he could bring himself to say something he did not do"; she also says "Mr. Spodek was very pushy and insisted that [Defendant] plead guilty" despite Defendant saying he was innocent. (*Id.* ¶¶ 2–6). However, the Court weighs this against other record evidence including the Spodek and Caserta Certifications and Defendant's own contrary statements made under oath during the fulsome plea hearing, which statements "made under oath in open court[] 'carry a strong presumption of verity.'" *Bonner v. United States*, No. 10-0354, 2010 WL 3419437, at *6 (W.D. Pa. Aug. 26, 2010) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also United States v. James*, 928 F.3d 247, 256 (3d Cir. 2019) (stating factual admissions made under oath during a plea colloquy "carry a strong presumption of verity" (quoting *Blackledge*, 431 U.S. at 74)). "The good faith, credibility and weight of a defendant's assertions and those made on his behalf in support of a motion [to withdraw a guilty plea prior to sentencing] are preeminently issues for the hearing court to decide." *Brooks*, 431 F. App'x at 99 (alteration in original) (quoting *United States v. Washington*, 341 F.2d 277, 281 (3d Cir. 1965)). "Assertions of innocence are entitled to little weight when a defendant has credibly admitted guilt through sworn testimony at a prior proceeding." *United States v. Daniels*, No. 06-0010, 2007 WL 709326, at *3 (W.D. Pa. Mar. 2, 2007) (citing *United States v. Trott*, 779 F.2d 912, 915 (3d Cir. 1985)). Here, the Court went through a thorough and extensive plea colloquy with Defendant, including detailed questions to establish the factual basis for the charges in the Superseding Information, to ensure that it was satisfied that Defendant knowingly, voluntarily, and intelligently pled guilty to the charged offenses. (*See* Tr.). The Court assessed Defendant's demeanor during the plea hearing and did not note any hesitation or equivocation from Defendant, particularly during the factual basis questions; indeed, nothing about the circumstances surrounding Defendant's guilty plea suggests that it was invalid, not credible, or entered involuntarily or unintelligently. Accordingly, the Court does not find Defendant's bald assertion of innocence now or Ms. Enriquez's supporting statement (as someone who has a personal relationship with Defendant) persuasive, nor does the Court find Defendant's assertion of innocence supported by sufficient evidence. Rather, the record before the Court, and particularly the extensive Rule 11 plea colloquy with Defendant (*see* Tr.), establishes that Defendant pled guilty of his own free will and was not coerced or threatened to do so. *See United States v. Mollica*, 284 F. App'x 990, 995 (3d Cir. 2008) (affirming denial of a defendant's motion to withdraw guilty plea, finding that "[g]iven [the defendant's] inconsistent testimony and the absence of evidence in the record–other than his own statements–supporting his claims of innocence, the [d]istrict [c]ourt did not abuse its discretion in finding [his] claims regarding his innocence unpersuasive"); *see also United States v. Stamm*, 755 F. App'x 190, 193–94 (3d Cir. 2018) (affirming denial of a defendant's motion to withdraw guilty plea, finding: "We perceive no error in that denial. [The defendant] does not highlight any specific way in which the District Court abused its discretion, and our review of the record reveals none. Rather, the record shows that in weighing 'the strength of [the defendant's] reasons for withdrawing [his] plea' and [his] 'assert[ion] [of] his innocence,' the District Court considered testimony from both [the defendant] and [the defendant's] attorney that supported its ultimate decision. That decision depended in part on a credibility assessment that led the District Court to believe the account of [the defendant's] attorney over that of [the defendant]. The District Court was best positioned to assess that conflicting testimony, and the record presents no reason to question its assessment." (some alterations in original)); *cf. Bonner*, 2010 WL 3419437, at *6 ("Petitioner's belated claims of dissatisfaction with his counsel and that his plea was 'involuntary' [we]re directly refuted by his own sworn statements in the record, as well as by the court's findings. . . . The record indicates that petitioner understood what he was agreeing to at the time of his guilty plea and that he was aware of the alternative actions that were available. Nothing about the circumstances surrounding his guilty plea suggests that it was invalid.").

position before this Court and why it should now grant him permission to withdraw his guilty plea. *See Berkowitz*, 2023 WL 2064510, at *3 (citation omitted); *Ho-Man Lee*, 2015 WL 1954600, at *13 (denying a defendant's motion to withdraw guilty plea where the court, among other things, found "no adequate explanation for [the defendant's] prior statements under oath that he had committed the offense knowingly and without authority" and noting the defendant's "lack of a sufficient explanation for his plea of guilty undermine[d] the credibility of [his] post-plea assertion of innocence" (citing cases)). Defendant's unexplained and unsupported assertion of innocence now is insufficient to justify withdrawal of his guilty plea. *See, e.g.*, *United States v. Muldrow*, No. 20-0014, 2022 WL 356559, at *7 (E.D. Pa. Feb. 7, 2022) (denying a defendant's motion to withdraw his guilty plea where the court found the defendant "fail[ed] to adequately explain why he swore to a different position at his plea colloquy," "fail[ed] to buttress his bald assertion of innocence with facts," and "otherwise fail[ed] to establish strong reasons to withdraw his plea"); *Ganuza*, 2007 WL 3391429, at *2 (finding defendant "failed to meaningfully assert his innocence" where he argued that he was "legally innocent due to violations of his Fourth, Fifth, and Sixth Amendment rights" but did not dispute or present any evidence to show that he denied possessing with intent to distribute a certain amount of cocaine (citations omitted)); *see also United States v. Bruno*, 614 F. App'x 72, 74 (3d Cir. 2015) (affirming district court's denial of a defendant's motion to withdraw his guilty plea where the district court concluded that the defendant "had failed to make an adequate factual showing to buttress his claims of innocence, that he had a sufficient understanding of the charge when he pleaded guilty, and that the collateral consequence of losing his pension was not a sufficient reason to permit him to withdraw his plea"); *United States v. Bango*, No. 08-0153, 2009 WL 1490600, at *2 (D. Del. May 28, 2009) (denying a defendant's motion to withdraw guilty plea where the defendant "proffer[ed] only an unsupported claim of

innocence," "failed to specify any facts in the record to support his allegations that the Government misrepresented relevant facts to the court," and, with respect to his claim of ineffective assistance of counsel, "[did] not demonstrate[] that his attorney's advice was unreasonable, or that he suffered any prejudice as a result of any of the alleged 'errors'"). "Indeed, Courts routinely find that an assertion of innocence weighs against permitting a defendant to withdraw a guilty plea when a defendant has failed to provide the critical explanation of why a contradictory position was taken at a plea hearing." *Wilson*, 2025 WL 1114647, at *8 (citing cases).

Thus, the first factor weighs in favor of denying Defendant's Motion.

### B. Defendant's Reasons for Withdrawal

The second *Jones* factor is the strength of the defendant's reasons for withdrawing his plea. *Jones*, 336 F.3d at 252. "In order for a guilty plea to be valid, it must 'represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Jones*, 336 F.3d at 253 (alteration in original) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). "Due process requires that a guilty plea be voluntary, that is, that a defendant be advised of and understand the direct consequences of a plea." *United States v. Bruno*, No. 11-0015, 2014 WL 2895415, at *13 (W.D. Pa. June 25, 2014) (citation omitted). However, "[t]here is no due process requirement that a defendant be advised of adverse collateral consequences of pleading guilty, even if they are foreseeable." *Id.* (citing *Livingston v. Pitkins*, No. 09-1278, 2012 WL 3011786, at *7 (M.D. Pa. July 23, 2012)). "A collateral consequence is one that is not related to the length or nature of the sentence imposed on the basis of the plea." *United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) (citing *Kincade v. United States*, 559 F.2d 906, 909 (3d Cir. 1977) (per curiam)).

"A court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if (1) the defendant shows that his attorney's advice was under all the

11

circumstances unreasonable under prevailing professional norms; and (2) the defendant shows that he suffered 'sufficient prejudice' from his counsel's errors." *Jones*, 336 F.3d at 253–54 (citations omitted); *see also Marte v. United States*, No. 13-7259, 2015 WL 3629540, at *4 (D.N.J. June 10, 2015) ("Claims of ineffective assistance of counsel under the Sixth Amendment are governed by the two-prong test set forth by the Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must first show that 'counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.' Second, a petitioner must show that counsel's deficient performance prejudiced his defense such that counsel's errors were so serious as to 'deprive [the petitioner] of a fair trial . . . whose result is reliable.'" (alterations in original) (citations omitted)). "To satisfy the prejudice requirement in the guilty plea context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Evola v. Att'y Gen. of U.S.*, 190 F. App'x 171, 175 (3d Cir. 2006) (quoting *Hill*, 474 U.S. at 59).

Here, Defendant argues he is requesting withdrawal of his guilty plea because he received ineffective assistance of counsel from his former counsel Mr. Spodek, which rendered his guilty plea involuntary and unintelligent. (*See generally* Mov. Br.; Def. Decl.; Reply Br.). Specifically, Defendant contends his former "counsel gave him bad, or at least incomplete, advice" in that he did not specifically advise him that pleading guilty to a federal misdemeanor was "the New Jersey state law equivalent of at least third-degree official misconduct convictions" and that by pleading guilty he would be forfeiting both his pension and the ability to hold any future public employment in the state of New Jersey.[7] (Mov. Br. at 2, 5–9 (emphasis omitted)). Defendant asserts that

---

[7] Defendant also notes that Mr. Spodek is not licensed to practice law in New Jersey (Mov. Br. at 2 n.1) but does not explain whether or how this affects his Motion and/or claim of ineffective assistance of counsel.

12

because he was not specifically informed of the Relevant Collateral Consequences, which he states are "very significant consequences" and "are automatic if a police officer pleads guilty to a federal misdemeanor connected to his employment[,]" he did not understand the full weight of his guilty plea, thus rendering his plea unintelligent. (*Id.* at 7–8 (emphasis omitted)). Defendant states that but for his former counsel failing to advise him of the Relevant Collateral Consequences, he would have exercised his right to go to trial, and he has suffered prejudice, "[t]he prejudice being that he ple[]d guilty to offenses that he did not commit under false pretenses." (*Id.* at 8).

In opposition, the Government contends that (i) the statements set forth in the Spodek Certification and the Caserta Certification contradict Defendant's claims of ineffective assistance of counsel; (ii) Defendant's former counsel's advice was not unreasonable; and (iii) in any event, Defendant did not suffer any prejudice. (*See generally* Opp. Br.).

The Court finds Defendant has not shown that his former counsel's advice was "under all the circumstances unreasonable under prevailing professional norms," nor has he shown he has suffered sufficient prejudice as a result. *See Jones*, 336 F.3d at 253–54 (citations omitted)). ***First***, while Defendant now asserts Mr. Spodek failed to inform him of the Relevant Collateral Consequences, Defendant, both in his Rule 11 application and under oath at the plea hearing before this Court, indicated that he had an opportunity to discuss everything with Mr. Spodek and that he was satisfied with Mr. Spodek's representation. (*See* D.E. No. 45; Tr. at 9:1–9:25, 14:7–16:17, 19:4–19:7, 29:13–29:19). Defendant also stated that he reviewed the plea agreement line by line with Mr. Spodek prior to signing it, that Mr. Spodek answered all the questions he had with respect to the plea agreement, and that he did not have any further questions. (Tr. at 15:18–16:10 & 29:20–30:18). Additionally, when the Court asked Defendant at the plea hearing if he had "any questions about the plea agreement, what it means, terms, phrases anything at all?", Defendant

13

responded "No, no, Your Honor." (*Id.* at 19:14–19:16).

***Second***, Defendant has not cited any supporting case law or other legal authority stating that his former counsel was required to inform him of the Relevant Collateral Consequences or, more generally, that his former counsel was required to inform him of all possible collateral consequences of a guilty plea. Moreover, even if Defendant's former counsel did have such an obligation, the Spodek Certification and the Caserta Certification both contradict Defendant's claim that he was not informed of the Relevant Collateral Consequences. Mr. Spodek states he advised Defendant (i) "that a misdemeanor guilty plea would preclude him from returning to work as a police officer," (ii) "that he should focus on future employment outside of the police department and law enforcement [more] generally," and (iii) "that he was likely to lose his pension if he entered a guilty plea under the terms of the Misdemeanor Plea Offer." (Spodek Cert. ¶¶ 9, 14 & 32). Mr. Spodek said he also told Defendant that he could not answer Defendant's detailed questions about Defendant's pension because he is not an employment attorney, but states that Defendant told him "he was represented by another lawyer in connection with his administrative proceedings with the [PPD], who he referred to as his 'Union Lawyer,'" so he encouraged Defendant to speak with his "Union Lawyer" about the impact the guilty plea would have on his pension. (*Id.*). Additionally, because Mr. Spodek believed that Mr. Caserta had more insight into the PPD and public service unions than he did, and because Defendant believed Mr. Caserta would better understand the nuances of the impact a misdemeanor guilty plea would have on Defendant's pension and future employment, Mr. Spodek reached out to Mr. Caserta who agreed to meet with him and Defendant.[8] (*Id.* ¶ 15). On December 18, 2023, Mr. Caserta met with Mr. Spodek and Defendant and told Defendant during that meeting that if he pled guilty, he (i) would lose his job

---

[8] Mr. Caserta is admitted to practice law in New Jersey, has been practicing law since 1980, and says a large percentage of his clients are law enforcement officers. (Caserta Cert. ¶ 1).

14

with the PPD, (ii) would not be able to return to work as a police officer, whether at the PPD or elsewhere, and (iii) would not receive his pension from the PPD. (*Id.* ¶¶ 16–19; Caserta Cert. ¶¶ 6–11).

***Third***, even if Defendant's former counsel did not specifically inform Defendant that "a misdemeanor guilty plea in federal court is the equivalent of at least a third-degree official misconduct conviction in the State of New Jersey" and/or that Defendant would or might have to give up future public employment, Defendant has not shown that nor how his former counsel's actions were unreasonable under prevailing professional norms. (*See* Mov. Br.; Reply Br.; Def. Decl.). Like the defendant in *Wilson*, because Defendant here "has failed to show that [his] prior defense counsel's actions were 'under all the circumstances unreasonable under prevailing professional norms,' and that [he] 'suffered "sufficient prejudice" from his counsel's errors,' Defendant's ineffective assistance argument lacks merit." *Wilson*, 2025 WL 1114647, at *11 (citation omitted); *see also Bruno*, 614 F. App'x at 74 (affirming district court's denial of a defendant's motion to withdraw guilty plea, noting, among other things, that the defendant asserted "he had not been informed that he would lose his substantial pension as a result of his guilty plea" but that the district court concluded that the collateral consequence of defendant "losing his pension was not a sufficient reason to permit him to withdraw his plea").

***Fourth***, Defendant appears to assert that Mr. Spodek essentially coerced him into entering a guilty plea and admitting to something he did not do (*see* Mov. Br. at 1, 5–6; Def. Decl. ¶¶ 10–11, 33–36), but his assertions are conclusory and unsupported, particularly given his admissions in his Rule 11 application and in light of the extensive colloquy the Court had with Defendant at his plea hearing (*see generally* Tr.). These new assertions contradict Defendant's prior statements under oath during his plea hearing where he responded "No" to the following two questions the Court

15

asked him: (i) "Has anyone made any different promises or assurances to you of any kind in an effort to get you to plead here today?" and (ii) "Anyone trying to force you to plead?" (Tr. at 19:19–19:23). Thereafter, the Court asked Defendant: "Are you pleading of your own free will because you are, indeed, guilty, sir, of those two counts?" to which Defendant responded "Yes." (*Id.* at 19:24–20:1). As noted above, "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Jones*, 336 F.3d at 252 (citations omitted).

*Fifth*, and lastly, Defendant also contends that "[i]n addition to the admitted lack of advice from his attorney, the Court also failed to fully advise [him] of the consequences of a guilty plea," and further states that "[d]uring the plea hearing, the [C]ourt advised [him] that he would have *limited exposure* if he plead guilty to misdemeanors" and that certain rights "may" be affected. (Reply Br. at 4–5; *see also* Mov. Br. at 2). However, Defendant contends that being forced to forfeit his job, his pension, and any future public employment "does not feel like limited exposure to [him]." (Def. Decl. ¶ 31 (emphasis omitted); *see also id.* ¶¶ 15, 19–22). Without citing to any supporting case law or other legal authority, Defendant appears to be implying that the Court had some obligation to inform him of the Relevant Collateral Consequences.

To the extent Defendant is arguing that the Court had an obligation to notify him of the Relevant Collateral Consequences, which are outside the confines of the Rule 11 colloquy, he has not cited any legal authority supporting that position. Indeed, the case law conversely supports the notion that outside of the confines of Rule 11, the sentencing court does *not* have any such obligation. *See United States v. Dwumaah*, No. 05-0157, 2007 WL 4333813, at *4 (M.D. Pa. Dec. 5, 2007) ("The sentencing court is not required to advise a defendant as to the collateral

16

consequences of the plea in order to validate the plea as voluntary and intelligent." (citing *Romero-Vilca*, 850 F.2d at 179)); *see also Maurer v. Glunt*, No. 14-1593, 2015 WL 1954135, at *6 (E.D. Pa. Apr. 30, 2015) ("The Supreme Court has held that a plea of guilty will not be found to be unknowing and involuntary in the absence of proof that the defendant was not advised of, or did not understand, the *direct* consequences of his plea. The failure to advise a defendant about the possible adverse *collateral* consequences of a guilty plea, on the other hand, does not offend due process concerns." (first citing *Brady v. United States*, 397 U.S. 742, 755 (1970), and then citing *United States v. Crowley*, 529 F.2d 1066, 1072 (3d Cir. 1976))); *Elmour v. Gov't of Virgin Islands*, No. 03-0023, 2005 WL 1653089, at *3 (D.V.I. June 24, 2005) ("In *United States v. Cariola*, 323 F.2d 180 (3d Cir. 1963), the court of appeals noted the absurdity of imposing on courts the burden to notify defendants of the myriad of legally significant adverse consequences flowing from a guilty plea[.]" (quoting *Cariola*, 323 F.2d at 186)).

Therefore, the second factor also weighs in favor of denying Defendant's Motion.

### C. Prejudice to the Government

The third *Jones* factor is whether the government would be prejudiced by the defendant's withdrawal. *Jones*, 336 F.3d at 252. "However, the government is not required to show prejudice if the defendant has not met the burden of establishing a basis for withdrawal of his guilty plea." *Ganuza*, 2007 WL 3391429, at *3 (citations omitted).

Here, Defendant contends the Government will not be prejudiced because he moved swiftly to withdraw his guilty plea, he has not yet been sentenced, and there are no witnesses who will be unable to testify at trial if his Motion is granted. (Mov. Br. at 2–3; *see also* Reply Br. at 5–6). The Government notes it does not need to show prejudice when a defendant fails to demonstrate the other *Jones* factors support a withdrawal of a plea, but notwithstanding that point, it would be

17

prejudiced if Defendant were permitted to withdraw his guilty plea because "[i]t has been more than four years since the two incidents that form the basis for his guilty plea occurred." (Opp. Br. at 2–3).

Based on the Court's analysis of the other *Jones* factors, the Court finds Defendant has not satisfied his substantial burden to show that there is a "fair and just reason" for withdrawal of his plea of guilty, and thus the Government does not need to show prejudice. *See Dumay*, 2024 WL 4370831, at *4 ("Because [d]efendant has not 'demonstrate[d] sufficient grounds for withdrawing the plea, the Government is not required to show prejudice.'" (second alteration in original) (citations omitted)); *Ganuza*, 2007 WL 3391429, at *3 (same); *see also United States v. Burrell*, No. 22-0294, 2025 WL 639332, at *4 (E.D. Pa. Feb. 27, 2025) (declining to assess potential prejudice to the Government and denying a defendant's motion to withdraw her guilty plea based on her "failure to establish that her plea withdrawal request is supported by a sufficient assertion of innocence and adequate reasons for the withdrawal"). However, even if that were not the case, the Government could show prejudice in the form of the passage of time, "[i]ncreased cost and inconvenience to the [G]overnment," and "the diminished memory and incentive to cooperate of Government witnesses." *Wilson*, 2025 WL 1114647, at *11 (first alteration in original) (citations omitted).

Therefore, the third factor also weighs in favor of denying Defendant's Motion.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to withdraw his guilty plea is **DENIED**. An appropriate Order follows.

**Dated: June 6, 2025**                             *s/ Esther Salas*
                                                                      **Esther Salas, U.S.D.J.**